UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TEHRI E.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 2:18-CV-01402

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. For the reasons set forth below, defendant's decision to deny benefits is reversed and remanded for additional proceedings to determine whether plaintiff is disabled.

I.     <u>ISSUES FOR REVEW</u>

1. Did the ALJ err in evaluating medical evidence, including: a. finding Plaintiff's migraines to be a non-severe impairment; b. rejecting opinion evidence by treating physicians; and c. failing to include the migraine headache limitations in the RFC?

2. Did the ALJ err in rejecting a portion of Plaintiff's testimony?

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff first applied for disability insurance and supplemental security income benefits on May 12, 2011. Dkt. 8., Administrative Record (AR) 114. Plaintiff initially alleged that she became disabled on November 9, 2009. AR 114. Plaintiff's applications were denied initially and on reconsideration on July 1, 2011 and October 4, 2011 respectively. AR 114. After a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on May 24, 2012. AR 111-127. On April 1, 2013, the Social Security Appeals Council denied Plaintiff's request for review. AR 132-137. Plaintiff then appealed the ALJ's decision to the United States District Court for the Western District of Washington (Court), which affirmed the ALJ's decision on January 31, 2014. AR 190-200.

Plaintiff did not appeal, and instead applied again for disability insurance benefits on July 30, 2014 and for supplemental security income benefits on September 22, 2014. AR 32, 337-338, 339-347; the ALJ determined an alleged onset date of May 25, 2012.[1] AR 32, 70. Plaintiff's new applications for disability insurance and supplemental security income benefits were denied initially and on reconsideration on January 13, 2015 and April 22, 2015, respectively. AR 32, 201-209, 214-218, 219-225.

On November 7, 2016, ALJ Ilene Sloan held a hearing on plaintiff's 2014 applications. AR 67-110. On April 13, 2017, the ALJ issued an unfavorable decision. AR 29-46. The Appeals Council denied Plaintiff's request for review. AR 8-14. Plaintiff appealed to this Court and seeks reversal and remand for additional proceedings. Dkt. 10, p. 17.

---

[1] ALJ Sloan found that because the prior ALJ's decision was administratively final, the timeframe for consideration of Plaintiff's new applications began the day after the prior ALJ decision, May 25, 2012. AR 32, 70.

## III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"*Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## IV. DISCUSSION

The Commissioner employs a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. At step two, an impairment does not meet the requirements for "severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.920(c); SSR 85-28, 1985 WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR

85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

The ALJ assesses the claimant's residual functional capacity ("RFC") to determine whether he or she can perform past work or make an adjustment to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). It is the ALJ's burden to show, at step five, the claimant can perform jobs that exist "in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); 20 C.F.R. §§ 404.1520(e), 416.920(e).

In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) including the ability to do the following. She can occasionally balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes or scaffolds. She can occasionally climb stairs. She can frequently push/pull with the bilateral upper extremities. She should avoid concentrated exposure to hazards and moving machinery and unprotected heights.

AR 38 (citations omitted). Based on the vocational expert's testimony, the ALJ determined that Plaintiff was able to perform her past relevant work as an administrative assistant, receptionist, and/or a technical publications writer. AR 42-43, 103-104.

The ALJ also made alternate step five findings. Based on the vocational expert's testimony that an individual with the same RFC as plaintiff—and the same age, education, and work experience—could perform jobs existing in significant numbers in the national economy, the ALJ determined that were a significant number of sedentary, unskilled jobs Plaintiff could perform at step five. AR 44-45, 104-105.

A. Step Two Determination

Plaintiff contends that the ALJ erred in finding her migraines to be a non-severe impairment at step two of the sequential evaluation. Dkt. 10, pp. 3-8. Plaintiff alleges that the ALJ erred by concluding that Plaintiff's migraines had responded well to treatment and that her presentation at office visits had been normal. Dkt. 10, p. 3.

Even if the ALJ erred in finding Plaintiff's migraines non-severe, this would constitute harmless error. The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)).

In *Buck v. Berryhill*, the Ninth Circuit recent emphasized that in assessing the RFC, an ALJ must consider limitations and restrictions imposed by all the impairments, even those that are not 'severe', and that an RFC should be precisely the same regardless of whether certain impairments were found severe at step two of the sequential evaluation. 869 F.3d 1040, 1049 (9th Cir. 2017) (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). In *Buck*, the Ninth Circuit concluded that because the ALJ decided step two in the claimant's favor and was required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis for a remand." Id. (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

In this case, the ALJ decided step two in Plaintiff's favor, finding that Plaintiff had the severe impairments of fibromyalgia and obesity. AR 35. Although there may be reason to distinguish *Buck* in a situation where the ALJ's RFC analysis showed that the ALJ did not

consider certain impairments in the RFC after finding them non-severe at step two, *see Winkle v. Berryhill*, No. C17-1633 TSZ, 2018 WL 5669018, at *2 (W.D. Wash. Nov. 1, 2018), in the present case, the ALJ considered plaintiff's migraines when determining the RFC (including balancing limitations in Plaintiff's RFC to account for the combined effects of her migraines, obesity, and fibromyalgia). AR 41-42. The Court therefore finds this error was harmless.

B. Medical Opinion Evidence

1. Dr. Jaffy

Plaintiff contends the ALJ erred by discounting the opinion of Plaintiff's treating physician, Matthew Jaffy, M.D. Dkt. 10, pp. 16-17. Dr. Jaffy completed a physical functional evaluation form concerning Plaintiff's impairments in May 2016. AR 557-559. Dr. Jaffy assessed Plaintiff as being unable to perform a range of physical activities due to her migraines, fibromyalgia, and chronic fatigue syndrome (AR 558); he checked boxes on the form indicating that he thought Plaintiff was "severely limited" and was unable to meet the demands of sedentary work. AR 559.

The ALJ gave little weight to Dr. Jaffy's opinion, finding that it was a "check-box" opinion that relied heavily on Plaintiff's subjective allegations. AR 42. The ALJ found evidence of this in Section D of the form, where:

> Although Section D in this template form asks for the medical professional to, "[a]ttach chart notes detailing examination findings," Dr. Jaffy did not do so. This also indicates that Dr. Jaffy based his opinion on what the claimant told him instead of what the evidence shows. Dr. Jaffy did however, recommend that the claimant should become more active through physical therapy. This suggests that with increased physical activity, the claimant's overall health will improve.

AR 42 (citations omitted).

Plaintiff contends that the ALJ erred in citing Dr. Jaffy's decision not to attach his examination findings as a reason to discount his opinion, since Dr. Jaffy's treatment notes are

contained elsewhere in the record. Dkt. 10, p. 16. Even if the ALJ had considered the treatment notes cited by Plaintiff, this would have no effect on the ALJ's overall decision. Dr. Jaffy examined Plaintiff on May 16, 2016 and completed the DSHS evaluation form on the same day. AR 557-559, 587-593. Dr. Jaffy findings do not reference any data from this examination, or from plaintiff's medical history, that would explain the severe limitations assessed by Dr. Jaffy. *See Garrison v. Colvin*, 795 F.3d 995, 1008 (9th Cir. 2014) (Check box forms completed by physicians that have significant experience with a patient and are based on numerous records are entitled to weight that unsupported and unexplained check box forms do not merit).

Therefore, the ALJ did not err in deciding that Dr. Jaffy's conclusions concerning Plaintiff's migraine-related-limitations were based principally on a check-the-box form without independent examination findings or indications that Dr. Jaffy conducted an independent review of the plaintiff's medical records.

2. Dr. Murinova

Plaintiff argues that the ALJ did not adequately assess statements from Plaintiff's treating physician, Dr. Murinova -- that Plaintiff's migraines were "severe" and "disabling". Dkt. 10, p. 7. The Court is mindful that Dr. Murinova noted that Plaintiff's migraine related pain symptoms improved significantly during 2012-2013, AR 450, when she received Botox treatments; yet there is also a notation by Dr. Murinova that plaintiff's insurance would not cover any Botox treatment as of October 2013; due to insurance problems, plaintiff was unable to obtain Botox treatment for more than a year. AR 494, 496. Apparently, the last Botox treatment plaintiff received during her first round of treatment that occurred in 2012-13 -- before her insurance problems caused the treatments to be suspended -- was during the month of August, 2013. AR 448-450, 476, 494-496.

When she met with Dr. Murinova in June 2014, (after which Dr. Murinova started plaintiff on a second round of Botox treatment on October 1, 2014, AR 476), she told Dr. Murinova she had been suffering from "bad migraines 17 to 18 days per month". AR 495. Dr. Murinova stated that plaintiff previously experienced a 75% reduction in migraine pain in the past while being treated with Botox (during the period before her last treatment in August 2013 – and then her insurance stopped covering it in October 2013). AR 496. Therefore, the ALJ's decision concerning Dr. Murinova's medical assessment is supported by the record as to the period between May 25, 2012 and August of 2013.

But the ALJ's decision is not supported by substantial evidence after August 2013, because plaintiff was not covered by insurance and therefore stopped receiving Botox injections until October 1, 2014; the evidence concerning plaintiff's migraine symptoms after August 2013 is ambiguous, and therefore a remand is required -- as discussed below.

Plaintiff further contends that the ALJ erred in evaluating the opinion of State agency consultant Norman Staley, M.D. Dkt. 10, p. 7-8. Specifically, Plaintiff contends that the ALJ erred by assigning Dr. Staley's opinion great weight while not addressing Dr. Staley's finding that Plaintiff's migraines were a severe impairment. Dkt. 10, p. 7-8. The record shows that James Bailey, Ph.D., not Dr. Staley, opined that Plaintiff's migraines were a severe impairment. AR 171, 173-175, 183. It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.* The Court finds no error with respect to the ALJ's decision regarding the opinion of Dr. Staley.

C. <u>Evaluation of Plaintiff's Subjective Allegations</u>

Plaintiff alleges that the ALJ erred when evaluating Plaintiff's subjective allegations concerning the limiting effects of her migraines. Dkt. 10, pp. 8-15. In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject Plaintiff's testimony regarding the severity of her symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014).

As discussed above concerning the opinion evidence of Dr. Murinova, Plaintiff has presented objective medical evidence to support her allegations of symptoms and limitations due to migraines, as to the period between August 1, 2013 and present.

In a June 2017 function report, Plaintiff alleged that she has had severe migraines for 20 days per month for almost a decade, stating that her migraines "throw my neurological system off." AR 20. In a function report from 2014, Plaintiff alleged that her migraines "completely incapacitate" her for an entire day and last for between one week and three months. AR 387. Plaintiff alleged that her migraines cause severe nausea, dizziness, balance problems, hallucinations, and sensitivity to light and color. AR 20, 75-76, 82, 97-98, 387.

Plaintiff alleges that she has difficulties dressing, bathing, and caring for her hair due to the dizziness caused by her migraines. AR 21, 388. Plaintiff further stated that she requires reminders to eat because she loses time due to her migraines and stated that it is impossible for her to maintain a routine. AR 22, 26. Plaintiff stated that she has difficulty driving a car, walking, going outside, preparing food or using the toilet due to the danger caused by her hallucinations and dizziness. AR 21, 81, 94, 390, 531. Plaintiff stated that on bad days she cannot walk more than two yards before needing to rest, pay attention for more than 45 seconds to 10 minutes at a

time, or follow written or spoken instructions. AR 25, 392. Plaintiff alleges that when she gets really dizzy she uses a cane and/or a brace to remain standing. AR 26, 393.

During the hearing, Plaintiff testified that her migraines are a disruption in her neurological tissue that are sometimes accompanied by pain but are "always" accompanied by hallucinations. AR 94. Plaintiff testified that her hallucinations distort her senses, and that she was almost hit by a car on several occasions because her migraines made it seem that the cars were far away when they were nearby. AR 75-76. Plaintiff testified that she is unable to use a fork or knife because she has repeatedly cut herself due to her distorted senses. AR 76, 78. Plaintiff also stated that she sometimes has difficulty forming sentences due to her migraines, and that when she has a bad migraine, she can only form eight words at a time. AR 531. Plaintiff stated that her physician, Natalia Murinova, M.D., told her that her migraines are neurological in nature, and that full spectrum hallucinations are not uncommon with such a condition. AR 96. She added that her hallucinations caused her to feel as though "dirty, sticky, gritty people" were pressing themselves up against her randomly. AR 96, 531.

During the hearing, Plaintiff testified that she takes Ondansetron, which reduces her nausea symptoms. AR 77, 79. Plaintiff also takes Cyclobenzaprine, which reduces the frequency of her migraines. AR 79. Plaintiff's primary treatment for her migraines consists of Botox treatments. Plaintiff testified that Botox reduces the pain caused by her migraines but does not affect her other symptoms such as nausea, vomiting, light sensitivity, or hallucinations. AR 80.

In July 2012, Plaintiff reported that she was having one headache per month and rated her pain as a five on a scale of ten. AR 475. By August 2012, Plaintiff reported that she was having between 15 and 20 migraines per month, but that the intensity of her migraines had improved by at least 40 percent after Botox therapy and that her mood was mostly upbeat despite periods of

frustration. AR 470-472. In September 2012, Plaintiff reported that she was having one or two headaches per week, and that her mood was generally good. AR 469. In October 2012, Plaintiff's physician Dr. Murinova again characterized Plaintiff's mood as "very pleasant" and noted that Plaintiff's migraines had decreased following Botox treatments, with no migraines in the areas of previous Botox treatments. AR 461. Plaintiff stated that her mood was "even keel" and that she was "fairly good natured." AR 464.

In January 2013, Plaintiff stated that her mood was good, and reported a decrease in her migraines following Botox treatment, and stated that she had no migraines at all in the areas of previous Botox injections. AR 457, 460. Plaintiff's physician, Dr. Murinova characterized Plaintiff as being "very pleasant" and confirmed that Plaintiff's migraines were much better in the areas where she'd received Botox injections. AR 457. Dr. Murinova noted that Plaintiff was tolerating Botox treatment without any difficulty and noted that Botox injections had significantly improved the frequency and intensity of her migraines. AR 459.

During an April 2013 visit, Dr. Murinova characterized her as extremely pleasant, and Plaintiff reported that she was sleeping well and stated that her mood was good. AR 452, 456. Dr. Murinova noted that following Botox treatment Plaintiff's migraines had reduced in both frequency and intensity. AR 452. At this time, Plaintiff reported that her Botox treatments had reduced the frequency of her migraines to two days per month. AR 452, 456. Dr. Murinova characterized this as a "significant" decrease and noted that Botox treatments had "significantly helped" Plaintiff. AR 454.

At the time of the Botox injections she received on August 1, 2013, Plaintiff stated that she had one headache per week since her last visit (and she also reported one headache per month). AR 451. In addition, she described the pain as 9/10, stabbing, sharp, and blinding.

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 11

Plaintiff also reported between 70 and 80 percent improvement in her migraine-related-pain-symptoms. AR 448-51. She experienced headache, memory problems, trouble concentrating, lack of energy, trouble with sleep, and dizziness; her mood was upbeat. AR 451.

Plaintiff did not receive any Botox injections between August 2013 and October 2014 due to a lapse in her insurance. AR 476, 551. In June 2014, Plaintiff told Dr. Murinova that after stopping her Botox treatment, her headaches increased in frequency from twice a week to 17 or 18 days per month. AR 495. During an office visit in October 2014, Plaintiff stated that she wanted to re-start her Botox treatment because they had reduced her pain symptoms by 75 percent. AR 476.

Plaintiff underwent a consultative psychological examination with Kate Lund, Psy.D. in in December 2014. AR 529-533. As part of the examination, Dr. Lund conducted a clinical interview and a mental status examination. Plaintiff made statements concerning the frequency and intensity of her hallucinations, and Dr. Lund observed that Plaintiff was oriented to person, place, and time. AR 531. Dr. Lund further observed that Plaintiff's mood and affect were natural, that she was pleasant and cooperative, that her thought processes were linear and goal directed, and that her thought content was appropriate. AR 531-532. Dr. Lund also noted that Plaintiff's insight and judgment were good. AR 532. Dr. Lund noted that during the examination there was no evidence of delusions or hallucinations, and she assessed that plaintiff would require comprehensive treatment (medical and psychological). AR 532. And, Dr. Lund stated that "[f]ull-time sustained employment is unlikely at the present time based on the range of challenges outlined in this report." *Id.* Dr. Lund also found that "when her migraine symptoms are particularly intense the claimant experiences sensory disturbances, which impact her ability to engage in activities such as using a fork and knife to feed herself, brushing her hair and

showering. . .. [claimant experiences difficulty with word finding, speaking and overall comprehension at points during a migraine. As noted, claimant does not drive. The claimant's history with these noted symptoms has significantly impacted her overall function and her ability to engage in activities. . ." AR 533-34.

Plaintiff reported a flare up of her migraines symptoms in January 2015, after she re-started Botox therapy. AR 551. By March 2015, Plaintiff noted that the intensity of her migraines had improved by between 30 and 50 percent. AR 538. In April 2015, Plaintiff stated that while Botox treatments helped with her pain symptoms, she continued to experience hallucinations, photophobia, nausea, and vomiting. AR 625. In June and September 2015, Plaintiff again reported a 30 to 50 percent improvement in the intensity of her migraines. AR 673, 691. In January 2016 Plaintiff stated that Botox had decreased the intensity of her migraines by between 40 and 60 percent, that she had two or three headache free days per month, and that she had not had a migraine at all for a week. AR 668. By April 2016, Plaintiff continued to report improvement in her symptoms, stating that the intensity of her migraines had improved by 40 to 60 percent. AR 662.

The ALJ found that Plaintiff's presentation during office visits was normal, and that "common-sense" suggests that if any of Plaintiff's physicians found her symptom complaints credible she would likely have been hospitalized for further examination. AR 37. Plaintiff has repeatedly stated that her Botox injections have no effect on her hallucinations. AR 80, 625. The ALJ has not alleged or pointed to any evidence suggesting that Plaintiff is malingering.

Plaintiff also argues that the ALJ erred in finding that Plaintiff's activities of daily living did not support her allegations concerning her migraine symptoms. Dkt. 10, pp. 11-14. Plaintiff disputes the ALJ's finding that Plaintiff's ability to work on a novel, write legibly, and engage in

a casual romantic relationship were grounds to reject Plaintiff's migraine related allegations. Dkt. 10, pp. 11-14. The ALJ reasoned that the extreme limitations Plaintiff alleged with respect to her migraine-related hallucinations and delusions would render her incapable of performing even basic activities. AR 40-41. Plaintiff's argument has merit, because a finding that Plaintiff could perform these activities would not, by itself, be sufficient to support a conclusion that Plaintiff could sustain full time work activity.

The ALJ has provided clear and convincing reasons for rejecting Plaintiff's allegations concerning the severity of her migraine related symptoms with respect to the period of May 2012 through July 2013. On and after August 1, 2013, the record is ambiguous, and a remand is required for the Commissioner to further develop the record for the period of August 1, 2013 to present. The Commissioner is directed to fully develop the record concerning plaintiff's medical and psychological conditions existing August 1, 2013 to present, and consider the severity of her symptoms as well as any impact those symptoms may have on her functioning. Then the Commissioner is directed to conduct five-step analysis on this fully developed record.

## CONCLUSION

Based on the foregoing discussion, the Court affirms the ALJ's decision as to the period from May 25, 2012 through July 31, 2013. The Court finds the ALJ erred in determining plaintiff to be not disabled for the period from August 1, 2013 to present, and Defendant's decision to deny benefits therefore is reversed and remanded for additional proceedings concerning that period.

Dated this 9th day of September, 2019.

Theresa L. Fricke
United States Magistrate Judge